UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

     Plaintiff,                  Criminal No. 22-cr-20519

v.                              Hon. Laurie J. Michelson

D-2 Karamoh Turner,

     Defendant.

---

## United States' Response in Opposition to Defendant's Motion to Revoke the Order of Detention

---

This matter is currently before the Court upon the motion (ECF No. 86) of the defendant, Karamoh Turner ("D-2 Karamoh Turner"), pursuant to 18 U.S.C. § 3145(b), to revoke the Detention Order (ECF No. 41) entered by United States Magistrate Judge Kimberly G. Altman on November 8, 2022. As further stated, the United States opposes Defendant's release.

Defendant is charged by Indictment (ECF No. 1) with Count One – Kidnapping Conspiracy, occurring on or about November 14, 2022, pursuant to 18 U.S.C. §§ 1201(a)(1) and (c); and Count Two – Kidnapping, aiding and abetting, pursuant to 18 U.S.C. §§ 1201(a)(1) and 2.

1

Today, Defendant remains a danger to the community and because no condition or combination of conditions will reasonably assure the safety of the community or his appearance, Defendant's motion should be denied.

WHEREFORE, the United States respectfully requests that Defendant's motion be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney

/s/ David P. Cowen
David P. Cowen  (NM 142040)
Assistant U.S. Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9575
david.cowen@usdoj.gov

United States' Brief in Opposition to
Defendant's Motion to Revoke the Order of Detention

D-2 Karamoh Turner a confidant and member the 1125 street gang.  He used a firearm to assault the victim in this case, which was fundamental and the beginning of the kidnapping.  He remained involved throughout the entire ordeal. D-2 Karamoh Turner and his associates, both charged and uncharged, held the victim against her will and beat her because they wrongly believed that she had participated in the carjacking and shooting of D-1 Cortez Blake.  D-2 Karamoh Turner's ability to access firearms and the retaliatory nature of this case presents a clear threat to the victim, along with any witnesses.  The information provided below is relevant to the issue of bond.  D-2 Karamoh Turner's membership to this group, as well as his own acts of violence, all disqualify him for release.

## I.   Background

### A.   1125 Gang – Acts of Violence and Retaliatory Shootings

The government filed a written proffer (ECF No. 29) which includes background information about the 1125 gang.  The 1125 gang was part of a series of violent attacks and retaliations that occurred in November and December, 2021. Specifically, on November 11, 2021, 1125 gang member D-6 Armond Williams was shot, and D-2 Karamoh Turner was listed as a victim in this incident.  On

3

November 14, 2021, 1125 gang member D-1 Cortez Blake was carjacked and shot. On November 16, 2021, an individual related to a suspect in the carjacking and shooting of D-1 Cortez Blake had her home on Fenmore street shot up. She was shot but survived. This was recorded on nearby surveillance video and has been shared with the defense.

Shell casings were collected from the scenes of these shooting and processed. The National Integrated Ballistic Information Network ("NIBIN") linked the shooting on November 16, 2021, on Fenmore to casings found in the vehicle it is believed that 1125 gang member Carlos Reed and D-3 Semaj Ayers were also shot in on November 16, 2021. Reed was killed but D-3 Semaj Ayers survived. One month later, on December 17, 2021, another suspect in the carjacking and shooting of D-1 Cortez Blake was shot.

### B. Motive and Opportunity – The Kidnapping

On November 14, 2021, Victim 1 and D-1 Cortez Blake were riding in a Kia Soul. While at a stop sign, a car blocked their path. A woman and approximately four gunmen emerged from that vehicle. They ordered Victim 1 and D-1 Cortez Blake out of the Kia Soul. Victim 1 and D-1 Cortez Blake were physically pulled out of the car. All of the gunmen started firing weapons as Victim 1 and D-1 Cortez Blake ran away. D-1 Cortez Blake was struck by one of the bullets. After

shooting D-1 Cortez Blake, the four gunmen and the woman who ferried the shooters to the scene drove away in both cars.

Victim 1 found D-1 Cortez Blake leaning against a pole with a gunshot wound.  D-1 Cortez Blake, a member of the 1125 gang, called two suspected 1125 gang members who came to the scene.  Those men picked up Victim 1 and D-1 Cortez Blake in a Jeep and rushed D-1 Cortez Blake to the emergency room.  D-1 Cortez Blake's fellow gang members dropped him off at the hospital and then offered to drive Victim 1 home.  Stranded, without her car or purse since both were stolen during the armed carjacking, Victim 1 accepted their offer to take her home.

But instead of taking Victim 1 home, the 1125 gang members drove her to an abandoned lot.  More men arrived and 1125 gang members started to question Victim 1 about what happened to D-1 Cortez Blake.  The men confiscated her cell phone and went through it looking for text messages.  Here, D-2 Karamoh Turner was armed with an assault rifle.  He forced Victim 1 out of the Jeep, hit her and pushed her to the ground.  Victim 1 was struck repeatedly while being questioned about the carjacking and shooting.  Victim 1 told the men everything she knew – that she was not involved and did not set D-1 Cortez Blake up, but they continued to hit her.  Surrounded by several men, Victim 1 was crying and deathly afraid. The men ordered Victim 1 back into the Jeep.  She complied given her small

frame, the presence of so many men, the presence of guns, and being hit repeatedly.  Victim 1 was unarmed.

Three men were now in the Jeep as they drove Victim 1 to D-1 Cortez Blake's house.  More men arrived at the home – roughly 15 total, including D-2 Karamoh Turner.  Victim 1 was forced to sit in the living room and a bedroom. Men pointed guns at her as she was interrogated about the carjacking and shooting.

During the interrogation, one of the men announced that some women were coming to the house to beat Victim 1.  D-4 Maijah Greene was one of three women who came to D-1 Cortez Blake's home to assault Victim 1.  D-4 Maijah Greene's group also brought a child to the scene.  D-4 Maijah Greene and D-5 Shatonnia Kimbrough interrogated Victim 1.  Then they both jumped Victim 1.  D-4 Maijah Greene and D-5 Shatonnia Kimbrough kicked, punched, and stomped Victim 1 as Victim 1 was balled up on the ground.  D-5 Shatonnia Kimbrough also hit Victim 1 with a bottle of hot sauce.  Victim 1's hair was pulled from her head, her nails were broken, and she was left bruised and bloodied.  Victim 1 had bruising on her head, hands, back, and face.  Some of the men watched as D-4 Maijah Greene and D-5 Shatonnia Kimbrough physically assaulted Victim 1.  Someone even recorded it on a cellular phone.  D-2 Karamoh Turner was present and armed.

D-1 Cortez Blake arrived and he joined in the beating by hitting Victim 1 with his crutches. Victim 1 was jumped and assaulted approximately four times while she was held against her will for several hours. Victim 1 was hit in the head and body with the crutches. After the final beating, 1125 member D-1 Cortez Blake directed D-4 Maijah Greene, D-5 Shatonnia Kimbrough, and the others to put Victim 1 in their car.

The women complied and Victim 1 was forced into the vehicle. D-4 Maijah Greene and D-5 Shatonnia Kimbrough ordered Victim 1 to show then where a certain woman lived – the woman who actually orchestrated the carjacking and shooting of D-1 Cortez Blake. Victim 1 complied and directed D-4 Maijah Greene, who was driving, to that person's home. The women wrote down the address and then drove to the east side of Detroit. D-4 Maijah Greene returned the victim's cell phone and forced Victim 1 out of the car. Victim 1 was left stranded and abandoned. Victim 1 called her mother and the police. She also went to the doctor for treatment following the savage beating administered by D-4 Maijah Greene and D-5 Shatonnia Kimbrough. Victim 1 was held from approximately 5:00 p.m. on November 14, 2021 and she was dumped on the east side at roughly 1:30 a.m. on November 15, 2021. D-4 Maijah Greene went back to her grandmother's house after leaving Victim 1 to fend for herself.

## II.     Applicable Law

This Court has the authority, pursuant to 18 U.S.C. § 3145(b), to review

Magistrate Judge Altman's previous order of detention. Such review is *de novo*.

*United States v. Hazime*, 762 F.2d 34 (6th Cir. 1985).

The Bail Reform Act of 1984 provides that a court shall order a defendant's

detention pending trial if, after a hearing, the judicial officer determines that "no

condition or combination of conditions will reasonably assure the appearance of

defendant and the safety of any person and the community." 18 U.S.C.

§ 3142(e)(1).  In short, the Act requires detention whenever the defendant is either

a risk of nonappearance or a danger to the community. *See id*.; *Hazime*, 762 F.2d at

37.  A finding of dangerousness "must be 'supported by clear and convincing

evidence.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18

U.S.C. § 3142(f)(2)).  But the government need only demonstrate the risk of

nonappearance by a preponderance of the evidence. *Hazime*, 762 F.2d at 37.

In determining the ultimate question of whether pretrial detention is

appropriate, the Court must consider the factors set forth in 18 U.S.C. § 3142(g).

## III.    Argument

D-2 Karamoh Turner used a firearm to kidnap, interrogate, and ultimately

retaliate against a young woman who he and members or associates of the 1125 Gang

8

wrongly believed had participated in the carjacking of D-1 Cortez Blake. This form of swift, dangerous, and cruel street justice is indicative of how dangerous D-2 Karamoh Turner is and can be. Releasing him now presents an extreme risk to the victim in this case and witnesses. D-2 Karamoh Turner has demonstrated what he is willing to do when he wrongly believes someone has turned against the 1125 Gang, and now that the victim and witnesses have assisted the government's investigation into D-2 Karamoh Turner's wrongdoing, he is even more dangerous. The motion should be denied.

### A. The 18 U.S.C. § 3142(g) factors support detention

A review of the Section 3142(g) factors shows that D-2 Karamoh Turner is a danger to the community, and that no conditions short of detention will reasonably assure the safety of any other person and the community.

### 1. Nature and circumstances of offense – Section 3142(g)(1)

The nature and circumstances of D-2 Karamoh Turner's conduct in this Indictment are extremely serious and favor detention. D-2 Karamoh Turner is charged with a felony offense punishable by up to life in prison. This is an extremely serious crime. D-2 Karamoh Turner assaulted Victim 1 with a firearm and participated in her being held for several hours because he believed – wrongly – that she set up the carjacking and shooting of 1125 gang member, D-1 Cortez

Blake.  The attack on Victim 1 was prolonged and vicious. There is no evidence that Victim 1 was fed, given water, or allowed to sleep while being held at D-1 Cortez Blake's house and beaten by members of the conspiracy.  It is an absolute miracle that Victim 1 survived approximately 8 hours of captivity, deprivation, physical abuse, and psychological manipulation.  The Court should be shocked and appalled that D-2 Karamoh Turner would engage in something so wicked and depraved – that D-2 Karamoh Turner and his friends would visit this kind of torture on a teenager.  D-2 Karamoh Turner does not address any of this in his motion.  D-2 Karamoh Turner is dangerous when he possesses firearms, and even when he does not possess them.  He retaliates when the 1125 Gang is harmed.

### 2.  Weight of the evidence – Section 3142(g)(2)

Next, consideration of the weight of the evidence also shows that detention is appropriate in this case.  The weight of the evidence "goes to the weight of the evidence of dangerousness and risk of flight, not the weight of the evidence of the defendant's guilt." *See United States v. Watson*, 2010 WL 3272934, at *8 (E.D. Mich. 2010) (citing *Stone*, 608 F.3d at 948); *see also Hazime*, 762 F.2d at 37 (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

Here, the weight of the evidence of D-2 Karamoh Turner's dangerousness is strong.  As noted above, D-2 Karamoh Turner's is violent when he possesses firearms, particularly against women.  He is violent when retaliating against those who he has deemed a threat to the 1125 Gang.  None of D-2 Karamoh Turner's proposed measures to support bond would minimize his threat to cause harm.

### 3.  History and characteristics of the defendant – Section 3142(g)(3)

Next, for related reasons, the history and characteristics of D-2 Karamoh Turner also weigh in favor of detention.  The actions of the 1125 Gang in November 2021 show in particular the history and characteristics of D-2 Karamoh Turner.  He is a young man and has strong ties to the community.  D-2 Karamoh Turner requests release so that he can live with his grandmother.  The United States does not dispute his grandmother is well-intentioned and would like to support him, but it does not seem reasonable to ask a grandmother to keep a watchful eye on D-2 Karamoh Turner, a 21-year-old man, and further expect her to realistically turn him in should he violate his conditions of release, most notably possess firearms and/or retaliate against witnesses.  Of note, D-2 Karamoh Turner was living with his mother when the kidnapping took place, so now releasing him to his grandmother does not seem like a stronger layer of protection.

Two of D-2 Karamoh Turner's brothers have pending federal charges in the Eastern District of Michigan related to wire fraud and aggravated identity theft. D-2 Karamoh Turner also has federal charges for wire fraud and aggravated identify theft in case number 22-cr-20596. Like D-2 Karamoh Turner, his brothers are members of the 1125 Gang.

D-2 Karamoh Turner has little criminal convictions. But that does accurately portray the criminal behavior that he has been a part of and remains capable of. On June 12, 2020, D-2 Karamoh Turner purchased a Walther .22 cal. rifle. About 28 days later, on July 20, 2020, Detroit Police Officers were on patrol and noticed a vehicle illegally parked in front of a residence. This is the same residence where the kidnapping of Victim 1 ultimately took place on November 14 and November 15, 2021. The license plate for the vehicle came back stolen, and the vehicle's driver was D-2 Karamoh Turner's brother. A firearm was observed in plain view. D-2 Karamoh Turner's brother was detained and people from inside of the residence came outside and became hostile with the police, who had to call for backup. During this incident the rifle that D-2 Karamoh Turner had purchased a few weeks prior was recovered from his vehicle, along with another loaded firearm as well. D-2 Karamoh Turner was cited for improper transport of a weapon. He failed to appear for court

in that case on February 23, 2021.  This is the same case referenced on page 4 of D-2 Karamoh Turner's bond report that he has an active warrant for.

At D-2 Karamoh Turner's detention hearing on November 14, 2022, the United States introduced several photographs and YouTube music videos of D-2 Karamoh Turner and members or associates of the 1125 Gang with firearms.  Below are three of those photographs.  The date of the first photograph is unknown, but the second photo is from a YouTube video posted publicly around April 27, 2021:

 

The third photograph below was posted to social media around October 24, 2021, with D-2 Karamoh Turner circled in red holding a suspected firearm, along with other members of the 1125 Gang:



As for the YouTube videos, two are still active and publicly available as of December 28, 2022.  At D-2 Karamoh Turner's detention hearing the United States introduced one video as Exhibit 13 (https://youtu.be/5Bw0e9MNpNs) and another as Exhibit 14 (https://www.youtube.com/watch?v=LkyAImCdqNU).  In Exhibit 13, D-6 Armond Williams is the primary rapper, but D-2 Karamoh Turner is observed with a suspected firearm. This video appears to have been posted on

14

August 24, 2022. Exhibits 9 through 12 from D-2 Karamoh Turner's detention hearing are screen shots from this video.  In Exhibit 14, D-3 Semaj Ayers is the primary rapper, D-2 Karamoh Turner is observed with a suspected firearm. This video appears to have been posted on April 27, 2021. As noted, the second photograph from above is a screen shot from this video.

On September 28, 2022, a fellow member of the 1125 Gang was a victim of a homicide in the City of Detroit.  Police reviewed his phone, and discovered a message from D-2 Karamoh Turner on August 7, 2022.  There, D-2 Karamoh Turner said: "Send me the pictures."  Below is one photograph that was shared, and D-2 Karamoh Turner is circled in red on the top right in a gray t-shirt holding a suspected firearm:



### 4.  Danger to the community – Section 3142(g)(4)

Finally, this Court must consider the nature and seriousness of the danger to any person or the community that would be posed by D-2 Karamoh Turner's release. This factor overlaps to a great extent with the discussion of the three previous factors.

Here, releasing D-2 Karamoh Turner, even on restrictive conditions, would pose a danger to the community and others.  D-2 Karamoh Turner finds himself charged with kidnapping because of retaliation.  Releasing him on bond simply opens the door back open for him to complete the job.  Now, he has even more motivation to seek revenge and silence the victim in this case, along with other

16

witnesses, because they constitute significant evidence against him on a federal charge that carries a sentence of up to life in prison.

Violence and retaliation follow the 1125 Gang. D-2 Karamoh Turner was listed as a victim in an incident from November 11, 2021, where D-6 Armond Williams was shot. D-1 Cortez Blake was shot a few days later on November 14, 2021. This is the shooting and carjacking that motivated D-2 Karamoh Turner and others to kidnap Victim 1. As noted above, 1125 Gang's retaliation did not stop with Victim 1, as the group is suspected of doing a drive-by shooting at a residence off Fenmore street on November 16, 2021, that was linked to a suspect involved in the shooting and carjacking of D-1 Cortez Blake just two days before on November 14, 2021. Shortly after the drive-by shooting, in which another incident person was harmed, two of D-2 Karamoh Turner's 1125 Gang member associates were shot. Carlos Reed, the person who drove Victim 1 to facilitate the kidnapping was dead. And D-3 Semaj Ayers was shot but survived. Casings recovered from the suspected vehicle that Reed and Ayers were shot in were linked through NIBIN back to the Fenmore address where the drive-by shooting took place just minutes before on November 16, 2021.

D-2 Karamoh Turner's possession of firearms and the horrendous facts in this case, along with the 1125 Gang's propensity for violence and retaliation as

highlighted by the events in November 2021, not only support detention, but also demands it.

**B. Defendant's proposed alternative to custody**

In his motion, D-2 Karamoh Turner requests the Court release him under the care of his grandmother, GPS, and/or home detention. (ECF No. 86, PageID.387-388). None of this would, in practice, protect society. Violating the conditions of his bond carry little consequence when weighed over retaliation or intimidation that might remove cooperating witnesses against him in the kidnapping case. The stakes are too high, and D-2 Karamoh Turner has shown what kind of retaliatory violence he is capable of.

A GPS tether is insufficient to protect the community and secure D-2 Karamoh Turner's future appearance in this case. "[A] tether offers little assurance of an appearance or an intent to forego activities that pose a danger to the community." *United States v. Tawfik*, No. 17-20183-2, 2017 WL 1457494, at *8 (E.D. Mich. Apr. 25, 2017); *see also United States v. Edwards*, No. 07-20605, 2010 WL 157516, at *5 (E.D. Mich. Jan. 13, 2010) (agreeing that tether "would be entirely insufficient to either ensure Defendant's appearance or protect the community from the danger posed by Defendant"); *United States v. Cureton*, No. 12-20287, 2013 WL 4496276, at *2 (E.D. Mich. Aug. 21, 2013) (holding that where a defendant is part

of a violent organization, a GPS tether "would not alleviate the danger that Defendant poses to the community").

## IV.    Conclusion

Magistrate Judge Altman has determined that no conditions can be fashioned to reasonably assure the safety of the community if D-2 Karamoh Turner is released.  Based on a consideration of the Bail Reform Act factors, the judgment of Magistrate Judge Altman is correct.  Accordingly, the United States requests that this Court deny D-2 Karamoh Turner's motion (ECF No. 86) and keep him detained pending trial.

Respectfully submitted,

DAWN N. ISON
United States Attorney

/s/ David P. Cowen
David P. Cowen  (NM 142040)
Assistant U.S. Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9575
david.cowen@usdoj.gov

Dated:  December 28, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 28, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorney(s) of record.

Respectfully submitted,

DAWN N. ISON
United States Attorney

<u>/s/ David P. Cowen</u>
David P. Cowen  (NM 142040)
Assistant U.S. Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9575
david.cowen@usdoj.gov